IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PIZZA INN, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-1598-N |
| | § | |
| ADEMOLA ADENIREGUN, | § | |
| | § | |
| Defendant. | § | |

### ORDER

This Order addresses Defendant Adeniregun's motion to enter judgment [92], Plaintiff Pizza Inn, Inc.'s ("Pizza Inn") motion for attorneys' fees [93], Adeniregun's motion for attorneys' fees [94], and Pizza Inn's motion for judgment [95].[1]

### I. EQUITABLE AND STATUTORY REMEDIES ON PIZZA INN'S LANHAM ACT CLAIM

After the close of evidence, the Court granted Adeniregun's motion for judgment as a matter of law on Pizza Inn's nonequitable Lanham Act claims, reserving judgment on Pizza Inn's equitable Lanham Act claims for decision by the Court after post-trial briefing, which has been completed. As an initial matter, the Court finds that Adeniregun infringed Pizza Inn's marks by his undisputed continued use of them after Pizza Inn terminated his franchise agreement. The Court now denies Pizza Inn relief on its equitable claims for three reasons.

---

[1] In view of the Court's disposition of these motions, all other pending motions in this case are denied as moot.

First, the equitable claims are barred by Pizza Inn's unclean hands. "'Unclean hands is a defense to a Lanham Act infringement suit.' . . . In its claims for equitable relief, 'the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims.'" *Sugar Busters L.L.C. v. Brennan*, 177 F.3d 258, 272 (5th Cir. 1999) (quoting *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987))); *see also Texas Tech Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 527-28 (N.D. Tex. 2006) (considering unclean hands defense, but finding facts did not support it).

The jury here found that Adeniregun failed to comply with the franchise agreement, but also found that Pizza Inn unlawfully retaliated against Adeniregun when it terminated his franchise. This meets the requirements for the unclean hands defense as stated in *Sugar Busters*. The unlawful termination is plainly inequitable conduct. Also, the unlawful termination is the very reason Adeniregun use of Pizza Inn's marks was infringing. But for that termination, Adeniregun would have had a license to use the marks. Thus, there is the requisite nexus between the inequitable conduct and the subject matter of Pizza Inn's infringement claims. The Court therefore denies Pizza Inn equitable relief on its Lanham Act claims.

Second, Pizza Inn has already recovered an award for Adeniregun's use of its marks. The jury awarded Pizza Inn damages on its breach of contract claim including "the total amount of royalty payments and advertising fees that Pizza Inn would have received from the operation of Adeniregun's restaurant from the date of termination through expiration of

the term of the Franchise Agreement." Court's Charge at 15 [90]. As the trial testimony disclosed, part of the royalty payments under the Franchise Agreement was for the use of the marks. Thus, Pizza Inn has already recovered a reasonable royalty for Adeniregun's use of its marks.

Finally, Adeniregun made no profits. The Court recognizes the importance of intellectual property and certainly does not endorse Adeniregun's conduct. If he had profited by his infringement, the Court would assess the equities here differently. But the trial record shows that without access to the Pizza Inn ingredients, the quality of Adeniregun's products suffered and his business ultimately failed. Though that might not be a defense absent Pizza Inn's unclean hands, when it is factored into the equitable mix it reinforces the Court's determination to deny additional equitable relief to Pizza Inn.

Pizza Inn in the alternative requests award of statutory damages.[2] 15 U.S.C. § 1117(c) provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of –
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

---

[2] Pizza Inn's complete argument is: "Alternatively, Pizza Inn requests that the Court award statutory damages in an amount that the Court considers just."

> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1116(d)(1)(B) defines "counterfeit mark" as follows:

> As used in this subsection the term "counterfeit mark" means—
> (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
> (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this Act are made available by reason of [36 U.S.C. § 380, dealing with the protection of Olympic marks and symbols];
> but such term does not include any mark or designation used on or in connection with goods or services of which the manufacturer or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

The final clause of the definition raises the question of whether Adeniregun used counterfeit marks, as the marks were authorized at the time they were created. Adeniregun did not create new, counterfeit marks, he simply continued to use the formerly-authorized marks and signage after Pizza Inn terminated his franchise. But as Prof. McCarthy explains: "A person need not actually reproduce a label bearing a trademark to be engaged in 'counterfeiting.' The unauthorized use of an original label is sufficient."  4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:15 (4th ed. 2011) (citing *Gen. Elec. Co. v. Speicher*, 877 F.2d 531(7th Cir. 1989) (using real boxes to contain counterfeit goods); *Westinghouse Elec. Corp. v Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894 (9th Cir 1997); *United States v. Petrosian*, 126 F.3d 1232 (9th Cir. 1997) (placing nongenuine products in genuine containers is both passing off and counterfeiting)). *See also*

ORDER – PAGE 4

*Interstate Battery Sys. of Am., Inc. v. Wright*, 811 F. Supp. 237, 244 (N.D. Tex. 1993) (holding defendant liable for trademark counterfeiting where defendant affixed original stickers or labels acquired from the manufacturer to batteries not manufactured by authorized manufacturers). Accordingly, the Court finds that Adeniregun used counterfeit marks, as defined by the statute.

The question then becomes what is a just amount of statutory damages. First, Pizza Inn did not suffer any quantifiable loss because of the infringement. The testimony showed that Adeniregun's franchise was the only Pizza Inn restaurant in the Sherman area. There was no testimony that patrons who would have otherwise gone to a different Pizza Inn were diverted to Adeniregun's restaurant by the infringing marks; there was not another Pizza Inn in Sherman for these hypothetical consumers to patronize. Once Pizza Inn terminated Adeniregun's franchise, Pizza Inn was not going to obtain any revenue from the Sherman area. While there was some evidence that Pizza Inn's reputation could have been harmed by the substandard quality of the food at Adeniregun's restaurant post-termination, the evidence is not conclusive, and the Court sees no principled basis for placing a dollar value on the nebulous reputational injury.

Conversely, the Court finds there was no benefit to Adeniregun from his infringement. The record showed that his restaurant lost money after the franchise termination, leading eventually to going out of business and foreclosure. Thus, this case raises the unusual circumstance where the mark holder sustained no damages and the infringer gained no profits. Nonetheless, the Court feels compelled to impose some statutory damages for two

reasons. First, it is important to deter others from infringing conduct. *See, e.g.*, *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 695-96 (W.D. Tex. 2008). Second, Adeniregun's infringement here was willful. While Adeniregun may have felt he had no choices other than infringing or losing his business, the Court disagrees. It was certainly feasible for him to change the name and signage and buy new uniforms. At worst, the added expense might have hastened the demise of his restaurant; at minimum, though, Adeniregun had alternatives to infringing that he simply chose not to exercise.

Accordingly, the Court awards Pizza Inn $15,000 in statutory damages, together with an additional $15,000 for willful infringing. *See* 15 U.S.C. § 1117(c)(2).

## II. ATTORNEYS' FEES

Both Pizza Inn and Adeniregun seek attorneys' fees, Pizza Inn for its breach of contract claim, and Adeniregun for his retaliation claim. The Court considers the requests in turn, using the familiar factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

### *A. Pizza Inn's Attorneys' Fees*

Pizza Inn seeks $518,700.60 in attorneys' fees and $16,973.46 in costs. Although Pizza Inn was the net loser in the jury awards, it is still entitled to attorneys' fees on its contract claim, both under Texas law and as provided by the Franchise Agreement.[3] Pizza Inn offers a 15% discount to segregate fees unrelated to its contract claim.

---

[3]The Court does not find this to be an exceptional case under trademark law and thus does not consider an award of attorneys' fees under the Lanham Act. *See* 15 U.S.C. § 1117(a).

This case raised three primary disputes: (1) breach of the franchise agreement; (2) Adeniregun's discrimination and retaliation claims; and (3) trademark issues.[4] There is clearly some overlap among the claims. For example, Pizza Inn's breach of contract claim also was its primary defense to Adeniregun's discrimination and retaliation claims, i.e., Pizza Inn alleged that it terminated the Franchise Agreement because of Adeniregun's breach, not because of discrimination or retaliation. Pizza Inn is entitled to recover fees solely related to its contract claims, as well as fees that related to its contract claims and were also intertwined with its other claims; it is not entitled to recover fees unrelated to its contract claims and must segregate those fees from its recoverable fees.

The Court generally accepts that Pizza Inn's attorneys' fees were reasonable and necessary in the context of the case as a whole from Pizza Inn's perspective. Adeniregun sought damages slightly over $1 million. In addition to its actual exposure in this case, Pizza Inn may well have institutional concerns arising out of its substantial franchisee relations that justify a much more vigorous prosecution and defense of the claims here than the confines of this dispute itself would justify. Half a million in attorneys' fees sends a certain message to franchisees with possible disputes.

Having noted that, the Court cannot remotely see that $535,000 in attorneys' fees and expenses is reasonable in prosecuting a $135,000 contract claim. This is not a case where Pizza Inn hoped to recover $1,350,000 and the jury awarded only 10¢ on the dollar. Pizza

---

[4]There was also a trade secret claim that does not materially affect the balance of the case from an attorneys' fees perspective.

Inn got everything it asked for. While in some contexts spending $4 in attorneys' fees for every $1 in dispute might be reasonable, this is not one of those.

The Court accepts Pizza Inn's lodestar calculation and accepts Pizza Inn's estimate of the 15% discount to account for work unrelated to its contract claim. The Court finds that none of the *Johnson* factors comes into play, except the amount involved and the results obtained. As discussed above, the amount of attorneys' fees is not reasonable in view of the amount of money involved in the contract dispute, notwithstanding that it may be reasonable in view of the case as a whole and Pizza Inn's overall business environment. The Court accordingly reduces the lodestar amount to $135,000, together with a contingent award of an additional $50,000 in the event of an unsuccessful appeal of the contract claim by Adeniregun.[5]

### B. Adeniregun's Attorneys' Fees

Adeniregun was the prevailing party on his 42 U.S.C. § 1981 claim for retaliation. The Court finds that Adeniregun is entitled to recover his reasonable attorneys' fees under 42 U.S.C. § 1988(b). Adeniregun presents evidence of a lodestar amount of $250,000, comprising $203,000 through trial and $47,000 in post-trial briefing. The two sides again quarrel about segregating fees for claims unrelated to the successful retaliation claim. The

---

[5]The Court probably would have reached this same result if it had closely parsed the allocation of time among the three main issues, scrutinized each time entry for reasonableness, and carved out unproductive (i.e., losing effort) time and excessive lawyering. That approach is the retail version of what the Court has determined on a wholesale basis. The Court declines to expend the Court's time on the labor intensive approach when a more efficient route to the same result is available.

ORDER – PAGE 8

Court finds that a 15% reduction, as suggested by Pizza Inn for its claims, is appropriate, resulting in a net lodestar amount of $212,500.

Adeniregun argues that several of the *Johnson* factors support an enhancement; the Court is not persuaded. Adeniregun argues that his law firm can afford only a limited amount of financial exposure from handling contingent fee cases. Due to the exposure in this case, the firm turned away two other contingent fee cases. The Court finds that this is simply a consequence of the firm's business model and does not justify requiring Pizza Inn to pay above a lodestar amount. Adeniregun also argues that because his trial counsel took the case on contingent fee, the lodestar should be increased. The Court does not understand this argument. Here the contingent fee is about half the lodestar amount. While that should not limit the lodestar amount, *see Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989), the Court sees no reason it should increase the lodestar amount. Adeniregun also argues that the other *Johnson* factors support increasing the lodestar amount; the Court finds the other factors to be neutral. The Court thus finds an award of attorneys' fees in the amount of $212,500 and expenses of $6,000 to be appropriate, together with a contingent award of an additional $50,000 in the event of an unsuccessful appeal of the retaliation claim by Pizza Inn.

### III. PERMANENT INJUNCTION

Pizza Inn also requests the Court to enjoin Adeniregun permanently from infringing on Pizza Inn's marks. The evidence at trial showed that Adeniregun ceased using the marks when his restaurant went out of business and that he has no intention of making any further use of Pizza Inn's marks. There is, thus, no threat of any further injury to Pizza Inn from

Adeniregun's use of Pizza Inn's marks.  Accordingly, Pizza Inn is not entitled to a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Signed March 15, 2011.

                                                                  _____
                                                                  David C. Godbey
                                                             United States District Judge